PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Humphreys and Huff
Argued at Richmond, Virginia

JOSUE MAR

v.        Record No. 0474-12-2

OPINION BY
JUDGE ROBERT J. HUMPHREYS
OCTOBER 16, 2012

COURTNEY MALVEAUX, COMMISSIONER,
 VIRGINIA DEPARTMENT OF LABOR AND INDUSTRY

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

Phillip T. Storey (Erin Trodden; Legal Aid Justice Center, on briefs),
for appellant.

Joshua N. Lief, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Josue Mar ("Mar") appeals the final order of the circuit court dismissing his petition for

appeal from the Virginia Department of Labor and Industry ("DOLI") decision closing his wage

claim against Velasquez Constructors Corp. ("Velasquez Constructors").  Mar argues on appeal

that the circuit court should have found that DOLI is required to apply procedures set forth in

Article 3 of the Virginia Administrative Process Act, Code §§ 2.2-4018 through 2.2-4023,

("VAPA Article 3") to his wage claim under Code § 40.1-29, the Virginia Payment of Wage Act

("the Wage Payment Act").  For the reasons that follow, we find that the VAPA Article 3 does

not apply to Mar's wage claim and we affirm the circuit court's order.

I.  BACKGROUND

On September 3, 2010, Mar submitted a claim for unpaid wages to DOLI, alleging that

Velasquez Constructors did not pay him for labor he performed for the period of February 1,

2010 to February 26, 2010.  Mar submitted his claim on a DOLI form and signed the form after a

statement authorizing DOLI "to investigate [his] charges and to take any action it deems necessary to enforce the provisions of Section 40.1-29, Code of Virginia." In correspondence to DOLI on September 21, 2010, Mar asked that if the employer disputed his claim, DOLI do the following under the VAPA (Code § 2.2-4000 *et seq*.):

> 1. Pursuant to Va. Code § 2.2-4022, issue subpoenas requiring the employer to produce [certain records of Velasquez Constructors].
>
> 2. Pursuant to Va. Code § 2.2-4019, schedule an informal fact finding conference to allow [Mar] to present evidence and argument in connection with the case.
>
>> a. Pursuant to Va. Code §§ 2.2-4020(A)(ii) and 2.2-4024(A), we request that a hearing officer preside at the informal fact finding conference.

DOLI responded to Mar in a letter dated October 15, 2010, acknowledging that it received his claim and that "a full administrative investigation of your claim will be conducted. The employer will be notified of your claim and given an opportunity to respond to your allegations."

On November 8, 2010, DOLI emailed Mar stating that it had notified Velasquez Constructors of Mar's claim and received no response from Velasquez Constructors or William Sutterfield ("Sutterfield"), the company's president. DOLI further stated that Mar had not presented documentation or other evidence to support his employment by Velasquez Constructors or his wage claim and that in order for DOLI to continue with the claim he must present documentation verifying his employment by Velasquez Constructors and demonstrating that he performed work for which he alleges unpaid wages are due. Mar provided no documentation of employment and responded by renewing his request for DOLI to issue subpoenas and schedule an informal fact finding conference, contending that the VAPA requires such action.

On December 6, 2010, DOLI informed Mar that it was attempting to contact Sutterfield and that he would be notified of the Department's findings. Then on December 28, 2010, DOLI notified Mar of its closure of his wage complaint, as it was unable to verify that Mar was an employee of Velasquez Constructors. DOLI wrote,

> Section 40.1-29, Code of Virginia, also known as the Virginia [Wage Payment Act], is applied and enforced only in situations where an employer-employee relationship exists.
>
> Based on the evidence presented to date, the Department is unable to verify that the claimants identified above were employees of Velasquez Constructors Corp. as they have alleged.

Mar petitioned the circuit court for review of DOLI's decision closing its investigation of his wage claim and its refusal to apply the procedures provided in the VAPA. He asserted that he is entitled to "the due process that [the VAPA] requires of an agency's case decisions." Mar argued before the circuit court that the VAPA presumptively governs an agency's actions, "'except where an agency's basic law creates an action and provides its own due process or where the VAPA expressly exempts an agency or its actions.' Virginia Bd. of Med. v. Virginia Physical Therapy Ass'n, 13 Va. App. 458, 465 ([ ] 1991)." Mar further argued that the Wage Payment Act does not provide its own due process and the VAPA does not expressly exempt DOLI from the VAPA process; therefore, DOLI must allow the VAPA Article 3 procedures, governing agency case decisions, to supplement procedures provided in the Wage Payment Act.

In dismissing Mar's appeal, the circuit court found that,

> because the [Wage Payment Act] provides sufficient due process procedures for the commissioner's investigation of complaints, [the] VAPA should not apply. The VAPA is designed only to apply when the agency does not already have an existing set of procedures in place. In addition, the commissioner's discretion to choose when to investigate or enforce certain claims should not be

disturbed because that would disrupt its ability to promote and
maintain the rights and duties of the employers and the employees.

This appeal followed.

## II. ANALYSIS

Where, as here, an appeal presents a pure question of statutory interpretation, the appellate court reviews such questions *de novo*. Va. Dep't of Health v. NRV Real Estate, LLC, 278 Va. 181, 185, 677 S.E.2d 276, 278 (2009). "Although decisions by administrative agencies are given deference when they fall within an area of the agency's specialized competence, issues of statutory interpretation fall outside those areas and are not entitled to deference on judicial review." Id.

The purpose of the VAPA "is to supplement present and future basic laws conferring authority on agencies either to make regulations or decide cases as well as to standardize court review thereof save as laws hereafter enacted may otherwise expressly provide. This chapter shall not supersede or repeal additional procedural requirements in such basic laws." Code § 2.2-4000. Code § 2.2-4002 provides a list of agencies exempted from the VAPA, but DOLI is not on the list. Code § 2.2-4018 provides exemptions from the operation of Article 3 of the VAPA, but the actions of DOLI in this case are not exempted in this section.[1]

---

[1] Article 3 provides that agencies "shall ascertain the fact basis for their decisions of cases through informal conference or consultation proceedings unless the named party and the agency consent to waive such a conference or proceeding to go directly to a formal hearing." Code § 2.2-4019. The parties have the right to reasonable notice of the conference, to be represented by counsel, to have notice of adverse facts in possession of the agency, and to be informed of the factual or procedural basis for an adverse decision in any case. Id. Code § 2.2-4020 provides for formal evidentiary hearings in any case where the basic law of the agency expressly provides for decisions after such hearings, and may do so where informal procedures have not been had or failed to dispose of the case by consent. Code § 2.2-4021 sets out a timetable for decisions, and Code § 2.2-4022 states that the agency shall issue subpoenas on the request of any party to a case to require "testimony or the production of books, papers, and physical or other evidence," but the section does not authorize discovery proceedings. Article 5 of the VAPA, provides for the review of agency decisions by higher courts. Code § 2.2-4026.

Mar first argues that the "Circuit Court erred in applying the rule for preempting Article 5 of the Virginia Administrative Process Act to an Article 3 challenge, because applying that rule to Article 3 is supported by neither the text nor the purpose of the statute."

Mar states that this is an issue of first impression for the Court, as case law only addresses "whether Article 5's provisions for judicial review of agency action are preempted by procedures in an agency's basic law." He continues, arguing that the circuit court "apparently relied on those Article 5 cases to hold, 'The VAPA is designed only to apply when the agency does not already have an existing set of procedures in place.'" Mar argues that "the purpose of [the] VAPA clearly states that Article 3 is designed to supplement an agency's basic laws, both present and future."

Interestingly, Mar cited cases in support of his argument before the circuit court that he now claims the circuit court erred in applying to its decision. Before the circuit court, Mar claimed that the VAPA presumptively applies to all state agencies in making their case decisions: "The Virginia Court of Appeals has repeatedly held that 'except where an agency's basic law creates an action and provides its own due process or where the VAPA expressly exempts an agency or its actions, the VAPA governs an agency's actions and judicial review thereof.'" He cited <u>Va. Bd. of Med. v. Va. Physical Therapy Ass'n</u>, 13 Va. App. 458, 465, 413 S.E.2d 59, 64 (1991), and <u>Sch. Bd. of York v. Nicely</u>, 12 Va. App. 1051, 1061, 408 S.E.2d 545, 550 (1991), among other cases. He added, "In other words, [the] VAPA 'is intended to be a default or catch-all source of administrative due process, applicable whenever the basic law fails to provide due process,'" again citing <u>Nicely</u>. He asserted that the "question becomes whether or not this basic law – the Virginia [Wage Payment Act] – 'provides its own due process.' <u>Va. Bd. of Med.</u>, 13 Va. App. at 465." He then proceeded to argue that the Wage Payment Act does not

provide its own due process, so the VAPA must operate to supplement the requirements contained in the Wage Payment Act.[2]

Mar now argues in this Court that the circuit court erred in applying case law interpreting Article 5 to its decision. He now asserts that Nicely and Va. Bd. of Med. were not about Article 3 preemption, although he advanced these cases below to guide the circuit court in its decision. Mar's positions regarding the VAPA case law and how the cases apply (or do not apply) to this VAPA Article 3 case are inconsistent. A party "'may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory. Nor may a party invite error and then attempt to take advantage of the situation created by his own wrong.'" Rowe v. Commonwealth, 277 Va. 495, 502, 675 S.E.2d 161, 164 (2009) (quoting Cangiano v. LSH Bldg. Co., 271 Va. 171, 181, 623 S.E.2d 889, 895 (2006)). Therefore, we decline to address this assignment of error, as error, if any, was invited by Mar by advancing precedent before the circuit court that he now states the circuit court should not have relied upon in its judgment.

Alternatively, Mar argues that,

> The Circuit Court erred in finding that the application of the Virginia Administrative Process Act Article 3 would interfere with the Department of Labor and Industry's Commissioner's [sic] discretion granted in the Wage Payment Act, because the Commissioner's limited statutory discretion does not apply to or conflict with the procedures required by Article 3.

The Wage Payment Act provides that all employers shall pay hourly rate employees at least once every two weeks or twice in each month and "[u]pon termination of employment an

---

[2] At oral argument, counsel for Mar asserted that he was not relying on "constitutional due process" for his position but rather the statutory "due process" found in the VAPA. We find this position confusing since "due process" is a legal term of art of constitutional dimension. While we might assume from this assertion that resolution of Mar's assignment of error is purely a matter of statutory construction rather than constitutional interpretation, Nicely and its progeny cited by Mar below apply constitutional due process concepts as do we.

employee shall be paid all wages or salaries due him for work performed prior thereto; such payment shall be made on or before the date on which he would have been paid for such work had his employment not been terminated." Code § 40.1-29(A)(1). It also provides for a civil penalty of up to $1,000 for each violation when an employer knowingly fails to make payment of wages in accordance with this section. Further provisions of Code § 40.1-29 address procedures for the Commissioner's handling of violations of this statute and penalties to be imposed:

> A. 2. The Commissioner shall notify any employer who he alleges has violated any provision of this section by certified mail. Such notice shall contain a description of the alleged violation. Within 15 days of receipt of notice of the alleged violation, the employer may request an informal conference regarding such violation with the Commissioner. In determining the amount of any penalty to be imposed, the Commissioner shall consider the size of the business of the employer charged and the gravity of the violation. The decision of the Commissioner shall be final.

>        *      *      *      *      *      *      *

> C. No employer shall withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without the written and signed authorization of the employee. . . .

>        *      *      *      *      *      *      *

> E. An employer who willfully and with intent to defraud fails or refuses to pay wages in accordance with this section is guilty of a Class 1 misdemeanor if the value of the wages earned and not paid by the employer is less than $10,000 and is guilty of a Class 6 felony if the value of the wages earned and not paid is $10,000 or more or, regardless of the value of the wages earned and not paid, if the conviction is a second or subsequent conviction under this section. . . .

> F. The Commissioner *may* require a written complaint of the violation of this section and, with the written and signed consent of an employee, *may* institute proceedings on behalf of an employee to enforce compliance with this section, and to collect any moneys unlawfully withheld from such employee which shall be paid to the employee entitled thereto. In addition, following the issuance of a final order by the Commissioner or a court, the Commissioner *may* engage private counsel, approved by the Attorney General, to

> collect any moneys owed to the employee or the Commonwealth. Upon entry of a final order of the Commissioner, or upon entry of a judgment, against the employer, the Commissioner or the court shall assess attorney's fees of one-third of the amount set forth in the final order or judgment.

(Emphasis added).

Mar argues that Code § 40.1-29(F) grants the Commissioner only the limited discretion to decide whether or not to initiate proceedings, and because the Commissioner chose to "initiate proceedings" by notifying Mar that a "full administrative investigation" of his claim would be conducted, the Commissioner cannot then withhold adjudicative procedures. Mar then argues that the procedural requirements of the VAPA Article 3 must apply once the Commissioner has decided to initiate the fact-finding functions of adjudication.

Code § 40.1-29(F) clearly grants the Commissioner discretion in deciding whether to institute proceedings to enforce compliance with the Wage Payment Act on behalf of an employee. The United States District Court for the Eastern District of Virginia has recognized that the Wage Payment Act, Code § 40.1-29, "provides that an aggrieved employee may submit a claim for unpaid or untimely paid wages to the [Commissioner], and *the Commissioner may in his discretion* pursue those claims on behalf of the employee, through both the administrative process and, if need be, through court action." Pallone v. Marshall Legacy Inst., 97 F. Supp. 2d 742, 745 (E.D. Va. 2000) (emphasis added). The district court dismissed the plaintiff's private action because his claim was based on Code § 40.1-29(F) which provides a remedy that can only be pursued by the Commissioner in his discretion. The district court noted that "the Act grants the Commissioner discretion whether and how to pursue a claim on an employee's behalf" and the General Assembly vested enforcement discretion in the agency. Id. at 747.

In finding that the Wage Payment Act vests the Commissioner with discretion as to whether and how to pursue a claim on an employee's behalf, we consider the purpose of the Act.

"'The purpose for which a statute is enacted is of primary importance in its interpretation or construction.'" VEPCO v. Board of County Supervisors, 226 Va. 382, 388, 309 S.E.2d 308, 311 (1983) (quoting Norfolk So. Ry. Co. v. Lassiter, 193 Va. 360, 364, 68 S.E.2d 641, 643 (1952)). The purpose of the Wage Payment Act is to establish the public policy of the Commonwealth as to the manner in which employers pay wages to employees. See Code § 40.1-29(A)(1). It is a regulatory not a remedial statute, "adopted under the police power of the state to protect the public against fraud and imposition." Welles v. Revercomb, 189 Va. 777, 783, 54 S.E.2d 878, 881 (1949). While the statute provides that the Commissioner may pursue wage claims on behalf of employees, such action is only incidental to the Commissioner's regulatory duty under the Act and is only pursued at his discretion. Therefore, the Wage Payment Act is clearly not remedial in nature and we are not required to liberally construe this statute as a remedy for the benefit of employees. See Harper v. Virginia Dep't of Taxation, 250 Va. 184, 195, 462 S.E.2d 892, 898 (1995). As the Pallone court concluded, "the Act does not provide a private right of action." Pallone, 97 F. Supp. 2d at 745. Rather, "an employee's underlying right to receive pay or wages derives not from the Act, but from the contract of employment, express or implied." Id. at 746 n.11. An aggrieved employee can pursue his private civil action based on claims of breach of contract and *quantum meruit*, which provide remedial relief for the employee. Id. at 747.

We further hold that the VAPA Article 3 is inapplicable to the Commissioner's exercise of discretion in Code § 40.1-29(F) of the Wage Payment Act. As this Court stated in Nicely, the VAPA does not govern all agency actions:

> [T]he VAPA expressly exempts certain agencies and agency actions from its provisions. [See Code § 2.2-4002]. Thus, the VAPA is intended to be a default or catch-all source of administrative due process, applicable whenever the basic law fails to provide process. See State Bd. of Health v. Virginia Hosp. Ass'n, 1 Va. App. 5, 332 S.E.2d 793 (1985). In summary, the

> VAPA governs an agency's actions except where that agency's basic law provides its own due process or where the VAPA expressly exempts a particular agency or its actions.

Nicely, 12 Va. App. at 1058-59, 408 S.E.2d at 549.

While the VAPA does not expressly exempt DOLI from its provisions, the Wage Payment Act does provide constitutional due process for the Commissioner's investigation of complaints. "Procedural due process guarantees a litigant the right to reasonable notice and a meaningful opportunity to be heard. . . . [T]he purpose of the guarantee is to provide procedural safeguards against a government's arbitrary deprivation of certain interests." Etheridge v. Medical Center Hospitals, 237 Va. 87, 97, 376 S.E.2d 525, 530 (1989) (internal citations omitted). Further, it is "presumed that public officials will discharge their duties honestly and in accordance with law. Should an official act arbitrarily or dishonestly, where protection is afforded by appeal and by review in the courts . . . the requirements of procedural due process are satisfied." Ours Properties, Inc. v. Ley, 198 Va. 848, 851, 96 S.E.2d 754, 756 (1957).

We note that it is *the employer* who is subject to government action under the Wage Payment Act, and thus in need of due process protection. The Wage Payment Act provides the employer with notice and an opportunity to be heard before DOLI may assign it a penalty for wage claims alleged by employees. Therefore, the Wage Payment Act provides sufficient due process and the VAPA does not govern the DOLI's actions pursuant to the Act.

The Commissioner's discretion in pursuing wage claims of employees does not end simply because he began investigating the wage claim and requested facts from the employer allegedly in violation of the Act. Requiring the Commissioner to go forward with a case just because he has initiated a fact finding investigation, as Mar argues the VAPA Article 3 requires, would override the discretion granted him in the Wage Payment Act.

Finally, Mar argues that,

> The Circuit Court erred in finding that applying the Virginia Administrative Process Act's Article 3 provisions would overly burden the Department of Labor and Industry or threaten to supersede the Wage Payment Act and other agencies' basic procedural laws, because the provisions of Article 3 of the Virginia Administrative Process Act and the additional procedures in the Wage Payment Act are complementary and do not conflict.

As stated above, the VAPA only applies where the agency is not expressly exempt or the agency's basic laws do not provide due process. Nicely, 12 Va. App. at 1058-59, 408 S.E.2d at 549. As established *supra*, the Wage Payment Act satisfies due process, thus the VAPA does not apply to DOLI's actions pursuant to the Act. Even if the procedural requirements under the VAPA Article 3 do not conflict with and could complement the Wage Payment Act, there is no requirement that such additional procedures apply where due process is already satisfied and we decline to impose additional unnecessary procedural requirements on DOLI.

III. CONCLUSION

Accordingly, we affirm the circuit court's order dismissing Mar's appeal.

Affirmed.